the case is United States v. Xavier Torres. Mr. Verrillo. Yes, your honor. Good afternoon. I please the court Maurice Verrillo for Xavier Torres. Mr. Torres appeals his conviction for drug conspiracy and possession of weapon offenses. The first point deals with the suppression request for suppression of evidence related to the February 6th stop in search. February 6th stop of Mr. Torres by officer Luciano was an improper seizure of his person and resulted in an unreasonable search violation. What are we looking to suppress from that search? So my understanding is it's statements and evidence. Right. But I'm still sort of unclear on exactly what. So starting with the statements now that we're post trial we must know what statements he made that were used against him that are Miranda. So can you tell me what the statements are that you're looking to suppress? Well, I started from the in terms of the overall situation, starting from the initial stop. I understand. But the goal of challenging the stop is to suppress the evidence, right? Right. Okay. Because we're not in a civil Fourth Amendment claim. So if the goal is suppression, I want to I want to start at the end for a second and I want to ask you so that as I listen to explain why they should be suppressed. I want to start that thought process with what we're we're going to suppress it if you win. Well, we want to suppress everything after the initial stop. Tell me what that is specifically what statements were used. This is my I'm confused because I've been through the trial court briefing and the appellate briefing and I cannot find the statement that you're looking to suppress and the evidence other than the car basically evidence. He made a statement that at the initial encounter that he was coming from Dewey Avenue that he was walking from Dewey Avenue. So that's the statement that you suppress. Okay. And which what physical or other evidence? Well, from from the beginning of the of the of the detention thereafter, what that would include, that would include the cash that would include cash on his person, the key, the key issue. Okay, but cash on his person, right? But the key wasn't seized from his person, right? Well, that's we didn't have a suppression hearing. But does he pretend that the was seized from his person? If you read the police report that was alleged by the officer, but it was in his, we would contend it was in his vicinity. It was in. Okay, so the seizure of the key and then the seizure of anything that resulted in a problem. Yes. Okay, thank you. Uh, can I, uh, and I had the same question. I had trouble understanding exactly what it was you were seeking to suppress in terms of statements or evidence. Um, in terms of the statement walking from julie Avenue, when do you claim that was made that statement? And under what circumstances was he handcuffed? Was it, uh, you know, uh, well, it was during the time in the building when they, when the officer came in and they had some dialogue at that point. So inside the building inside inside the apartment building. Yeah. Okay. Now what date on what date? That was the February 6th date. Okay. February six. Yes. The date of his arrest. That was the date of the, of the, uh, incident where he was, he was, uh, the officer had seen them outside and then they went into the apartment building. The officer followed into the apartment building from our standpoint without any reasonable suspicion. He was just in a neighborhood that allegedly was a tough neighborhood. But you don't know if at that point he was already handcuffed because he was handcuffed. Was it after he was handcuffed before he was handcuffed? Was it made initially when they approached him? It's unclear from the record. I think that part of the problem is we never had a hearing. Hearing wasn't granted on all these issues. So it's a part of the police report, I believe. But it was, it wasn't obviously developed because we never had a hearing. So you're relying on the police report for the, uh, fact for sort of the circumstantial facts underlying that. Yes, Judge. All right. Thank you. As I stated earlier, there was no observation of any drug activity by Mr Torres followed him into the building. He was handcuffed. He had been brought outside, left for short time, was detained again. And then, of course, we hear about this key that was was found and that vehicle was subsequently searched as a result of all these events. I've cited various cases in terms of the violations. Obviously, a Terry stop is very limited, dealing with determining whether there was to make, though, of this, uh, discrepancy in terms of where the key was found. I think you, uh, I guess the officer's report says that he was actually taken from his person, his person. The Mr Torres's affidavit says that the key was not recovered from his person. And if that's the case, if it was not recovered from his person, it seems like that's a problem in terms of him having him being able to assert he had a reasonable expectation of privacy and being entitled. Well, the original violation was there was not a reasonable suspicion to even stop it is our position. And then what arose from that terms of being detained point there was, I mean, I guess there's some sort of gaps in that part as well. At what point are you defining him as having been stopped? When I mean, the police officer says he goes into the building. Is that a stop? I mean, I just feel like there are a lot of factual gaps here. What? What's the point where there was a stop? Well, he was. He went into the building, and they had this conversation apparently about where he was before that he was handcuffed, and then he was brought outside as to sit patted down in the building or outside the building. Is there an initial frisk pat down? That was the way I understood the fact that it was during inside the building, and so he was brought outside. He was. He was handcuffed, brought outside. There was a short period where he left, then they brought him back. And then thereafter, there was the search of the vehicle. All of this arose. Our position is from the initial wrong of not having reasonable suspicion, not having a basis. Right. But I guess the thing I'm trying to pinpoint is the absence of reasonable suspicion. I mean, the police officer presumably didn't need reasonable suspicion just to go into the apartment. There was no. It wasn't a lot. It was just it's not entirely clear to me, but it seems like it's the best to be a little bit building. And so I don't know. I assume your argument is not or maybe it is that the officer needed reasonable suspicion just to enter the building. And if if you don't think that's the case, then I'm trying to figure out what's the point when it certainly needed reasonable suspicion. I would say after he asked him where he was, which was, he said, allegedly said that he had been walking. I think after that point, when he had put the handcuffs on at that point, I mean, I think he went beyond any kind of probable cause to arrest. Certainly at that point. So I guess I still have a question. I think this relates to a question that Judge Lee asked you, and that is in the declaration that he gave to the district court. This is page a 1 95 of the record, he said, as a key was found on the ground and law enforcement searched that vehicle. So he under oath advises the court that the key was not on him. He's sort of disavowing ownership of that key. Now, I understand that law enforcement said that he was in his right. But if that's your client's position, how does he have standing to challenge the search of that vehicle? Well, it was in the vicinity of him is what I understand the allegation was, and he was seized. If that officer had never seized him, our position is he would never be in the vicinity of a door to an apartment, but not have standing to challenge your search of that apartment where I can be in the vicinity of a container. Doesn't there have to be some evidence that for standing purposes that I have exercised control or have some measure of connection between the key fob and your client? Well, he was seized is our position. He was seized at that point. So all of the resulting evidence that came from that. But what if right after that, the cop not only searched the car, but also searched a neighbor's house with no connection to Mr Torres. He wouldn't have standing to challenge that. What? What? Judge Kahn's trying to get to is let's let's assume because reading the police report, I'm not sure there was reasonable suspicion to stop it. Let's assume there wasn't. But even if there wasn't, how does Mr Torres, having sworn to the district court that it was not his key and he didn't have it. How is the district court? Because the area you're claiming is the district court failed to have a hearing. So the district court has given a sworn statement that says this had nothing to do with me. Why would the district conduct a hearing at that point? He was charged with that contraband, but he's asserting that's a defense for trial, right? This car, this key had nothing to do with me, but he's expressly under oath, making a factual statement that deprives him of standing to challenge the or do you contest that that disavowing the key? Does you? Why does he have standing? I guess I'll ask. Well, he was seized and we did not have a hearing. I'm not asking about the seizure. Let's assume he was seized. Yes. How does he have standing? What is his privacy interest in the contents of the car based on his taking into account his assertion that the car is not connected to him? The as a result of the seizure, there was an invasion of his space, his privacy, right? And in the vicinity, allegedly of that space that he was at, there was a key there. Okay, so by picking the key up off the ground, which is what the affidavit contends, that's that collection of the key from the ground nearby constituted a search of Mr Torres's person. It was in his space. It was in his. But that constitutes a search. That is enough for an officer. That is their law that that has declared that before it would be the first to say that it constitutes a search of a person to collect an item that is on the ground nearby the person. Um, I don't know if I have a case that says that, but I mean, our position, that's what we need to hold. Our position is that everything arose from the initial. I understand. But I'm asking to find for you. Do we need to conclude that collecting an item from the ground near the target of search constitutes a search of the person? It was a search within his space. I would say within his within his privacy within his area. So, yes, if it's close enough to the person, but on the ground near them, it constitutes a search of the person. It's I don't know if it's his cartilage, his human cartilage, but that we would have to find that right. Well, I think that everything again, I hate to be a repeating myself, but but for all of the conduct that occurred before that the officer following him, they were next to a vehicle. They walked into apartment building, right? I think that you have to rise. Everything arises initially from that would be my position. All right. Um, so I think we have your position. You have a few minutes of rebuttal. We'll hear now from Mr. Angola. Yes. Good afternoon, members of the court. My name is Robert Maringola. I represent the United States on the appeal, and I've represented the United States at trial in this matter. The to pick up where we left off the struggle that this court has had in trying to articulate both the expectation of privacy and the alleged Fourth Amendment violation is exactly what the district court faced and why in refusing to hold an evidentiary hearing, the district court did not abuse its discretion. When the defense indicated they were relying on the police reports to establish a Fourth Amendment violation, they were given an opportunity to submit an affidavit alleging sworn factual statements that would establish a Fourth Amendment violation, either a possessory interest in the key fob or a reasonable expectation of privacy in the vehicle, and they didn't either. So therefore, the district court acted within its discretion in refusing to hold an evidentiary hearing on that matter. What was the reasonable suspicion for coming? So looking at the police report, it says I followed him into the into the apartment sort of foyer. Talk to him for a minute. I asked if he drove there. He said no. I noticed his breathing becoming heavier, and I placed him in handcuffs. So we're pretty clear. Sometimes handcuffs trigger finding the probable cause, but at least it should trigger that we need reasonable suspicion. At that point, what's the reasonable suspicion suspicion for the seizure? For putting him in handcuffs at that point? Well, just he seized right at that point. I don't. Do you dispute that he sees once he's handcuffed? No. Okay, so at least starting from that point, what is the reasonable suspicion to detain him at that point and seize him an evidentiary? I think that would have been a close call to establish. I'm not sure that from his person, right? I'm sorry. There was cash on his person. Yes. Was that cash used as evidence in trial? There was testimony that he had cash on his person at trial. Okay, so why was that admissible? Right. Why was that? Because that stop if there's a lack of reasonable suspicion for the stop setting aside the car on the statements, the cash it does come in a trial. It seized as a result of that stop and frisk, which occurs after handcuffing. When the only the police report only says I followed him in the house and he was breathing heavy, said he didn't drive. Well, I don't think the district court had before it an articulable basis or a specific argument that the defendant was handcuffed illegally. And I think the high crime neighborhood officers testimony that he that he had stopped people in that area with drugs made numerous drug arrests before that provides additional information as to support for his approach of the defendant, uh, in the area. But the district court never had a hearing because there was no specific articulated sworn violation of the defendant's constitutional rights based on that. So if the defendant had established that, perhaps that could have been flushed out at a hearing. But because the defendant say, Hey, they without reasonable suspicion, that's illegal. They should everything that they got from you should be seized. Was it just not specific enough? I hear you on the car, right? But we're setting aside the car for a minute. We're talking about the cash. Well, I think the cash also could have been there could have been an argument that given what was in the car and the officer's observation of the defendant having just left the car that they didn't know what what was in the car when they seized him and put the handcuffs on that search party. Yes, we're talking about when the officer in the lobby made the choice to put the handcuffs on Mr Torres and as a result of that seizure, patted and frisked, frisked him and seized the cash that was used as evidence of trial. I don't know if there was a seizure of cash at that moment or if the cash came off the defendant when he was taken to looking after being arrested for the drugs that were in the affidavit says I was pulled out of the hallway search where they acquired some of cash off of me and placed in handcuffs. So he says in his affidavit that that they seized cash off this person at the time before they observed the drugs in the car that he had just come from. Yes. Well, it doesn't refer to the car because he but he says that he and Jose entered to Burbank Street. I'm on a 1 95. Um, they acquired some cash off me, placed me in handcuffs. A key was found on the ground in law enforcement search the vehicle. So why isn't that enough to say at least the cash was seized improperly or at least there's enough of a question there to trigger a need for a hearing. Because I don't think he established that the initial approach of the defendant was problematic. And I think the lies that the defendant said to the officer at the time, combined with the officer's observation of individuals in that high drug trafficking in high crime area and previous arrests in that area would have given him articulable suspicion at that point. Mhm. Okay. I don't know if I answered the question area and the fact that the defendant said he had walked instead of saying he drove and that he had correct that he was not in that car and that the officer had made arrests in that area before that officer making arrests is that the officers aware that this is a drug. It's a high crime area argument, right? That this is a drug trafficking area. It's a neighborhood where this happens, right? That's that all seems to under the umbrella of this is a high crime area. Yes, I do. I think the officer's personal experience making arrest even provide personal knowledge of that. So that's coupled with the lie that the that Mr Torres allegedly told when he said I walked here, whereas the officer has seen him get out of the car and he asked him about the car and he's and he made a lie about the car suspicion to believe what  That there may be. He may be involved in some criminal activity. Okay. I don't know that that justifies an extensive detention. But, um, in any event, that officer never testified at a at a hearing. And I don't think the specific Fourth Amendment violation that we're fleshing out was set forth in the defendant's papers so that the court did not abuse its discretion in refusing to hold a hearing in that matter. Um, I would submit to the court that even if it had and that evidence that $500 had been suppressed at trial, the evidence in this case of this defendant's participation in this very violent armed drug trafficking conspiracy was overwhelming and that he would have been convicted even if that $500 hadn't been mentioned by one of the officers at trial. The amount was how much? I believe it was $500. $500 on his person. Yes. Yes. The, um, this defendant had standing in this organization as a key player in this organization. He was a runner. There was testimony from multiple cooperators describing his involvement in working the table as they called it, packaging drugs, re upping the suppliers on the block, coordinating and paying employees and enforcing discipline. The evidence showed that he, as well as the other co conspirators, were aware of the arsenal of firearms that were maintained by this organization, that they had permission to use them and that they were maintained to guard the stash houses to deal with problems as they was on the block and to enforce the territory that was controlled by this organization. And I think all of that established, uh, with the cooperator testimony and the numerous ways it was corroborated, established in multiple ways that viewed in the light most favorable to the government. There was more than sufficient evidence in this case to support the convictions for conspiracy and the possession and brandishing and discharging of firearms and furtherance of that conspiracy. Can you just address briefly the procedural error claim in sentencing as to Mr Torres and specifically, uh, the court held a hearing and the cross reference under Section two d 1.1. Uh, and the court relied on newness, um, testimony. And the claim is that newness admittedly on cross examination admitted to lying, etcetera. I'm not asking about the court's not. I'm not asking about the release of newness is records or grantees testimony, specifically just the court's finding a fact relating to the cross reference. If you could address that. Yes, Judge. I think the finding was based on Nunez is testimony as well as the testimony of Roberto Figueroa, as well as the testimony of Robert Standish. I think in combination, all of those things established beyond a preponderance of that Torres and Nunez killed John Gonzalez because of the belief that he was talking to other individuals and was going to be harming other members of the conspiracy. The photographs, for example, be corroboration of Standish and Roberto's, uh, description of how the killing of the victim occurred. Yes, I believe it would be corroboration of the location of the manner of the killing. Uh, and the timing of the killing. The those photographs established each of those things, and it corroborated the testimony testimony of those cooperators, which was very heavily challenged at trial. And that's why those photographs were admitted. The as a direct participant in the homicide provided further corroboration of that. I mean, just on little points, for example, Robert Standish and Nunez also testified that to the same car that the defendant was driving the same red Mustang at the same time in June of 2016. Um, so there were lots of small corroborating pieces of information that supported the district court's finding that Nunez, in combination with the other trial testimony established by a preponderance of evidence that the murder cross reference was appropriate in the case. Right. Thank you. Thank you very much. You have a couple of three minutes for Yes. Thank you. The next next item relates to the Nunez issue. Government sought an enhancement in the shooting and relied upon Mr Nunez. Law is clear about the use of co conspirators that they're presumptively unreliable need for independent corroborating evidence. That's the Mulder case. Well, I think part of the concern is, um, and I understand that Nunez was cross examined and admitted to lying to law enforcement. But, um, two questions I have for you. One of your arguments and on earlier issues, you seem to say, well, um, cooperating witnesses testimony has to be corroborated. But Nunez was present at the scene, and that is true if it's somebody who's hearing it hearsay. But if Nunez is that the scene of the And he's testifying. I did it along with Taurus. Then the law doesn't require independent corroboration. Let's leave aside whether there was or wasn't. Um, isn't that part of the problem is that you're applying that principle to a direct eyewitness as opposed to somebody who's tested a co conspirator who's testifying about something they've heard, not something Nunez is a unique situation because of the habitual lie that he admits to both to the grand jury to the police. He lied. Our position is he lied even at the end. That's true. And jurors and the jury presumably heard this and still chose to credit at least part of his testify trial. Right? No, he did. No. But what I'm what I'm suggesting is that jurors are instructed in the court in making these findings is no different than a juror. You can. Someone can choose to believe or not believe part or all or none of a witness's testimony. And if a witness is found to be lying, um, the judge could still credit his testimony about what occurred in the alleyway and not and find that he lied about other things. That's not necessarily, um, inconsistent. Well, we contended that that his testimony was not credible, that he should not have been relied upon was one of our arguments. We as an appellate court don't get to make that finding firsthand. We get to assess whether there was evidence to support the judge's finding. And our our standard of review is a very high bar. Well, we had an issue with the credibility. We had an issue with the failure to disclose all of the mental health records, which I raised. We received two pages after actually he testified. What do you claim? The court conducted an in camera review, correct? That's what my understanding. And the court determined that none of the information in that in camera review in the in that it was redundant to what had come out during cross examination. What do you claim was not disclosed that would have? Well, I think I think in my reply, your honor, brief, I listed 11 items that were not listed, including and let me just say this. The request was not only related to his mental competency. It also related to Brady issues. Potentially his ability to teach him an ability to in any way exculpate. So I think if you take Brady as well as the other issues, there was a variety of things. And I listed in my reply brief some specific items. And of course, I did cite the DSM five about this dissociative disorder that was disclosed. He had as well. So I think those are very severe issues. We had raised issues as to his credibility or his testimony related to what he said happened. And the issue of the father, he claims that the father was there and so forth. And the father testified said he wasn't there. And even in the record, this detective Adams, when he testified about searching the property after this event, heard all of that and still made the factual findings it did. What are we to do as an appellate court? Well, I would submit it. It's inconsistent with what was in the evidence is the way I would look at it. I mean, that's the way I would present it to you, Your Honors. Um, and the final issue I would just point out. Um, I know I gave you a very extensive brief, so I can't I can't go through every issue with you. But, uh, I would I would reserve on on 0.3 and four, but I'm 0.5 on the issue that you raised about this, uh, to a 1.1. Um, the court sentenced Mr Mr Torres to life plus 20 years. And I think because it was advisory, it was not mandatory. The government did not charge him substantively on this event. I think the court has to consider all those facts. He was 37 years old, had a lot of issues in terms of upbringing and so forth. And I think there were many factors in the advisory setting. Again, the guidelines are advisory that just would have justified and not a life sentence. But, uh, on the on the underlying drug charge, he was facing 15 years on if the court doesn't grant the other issues which had raised on insufficiency, that would be 10 years. I mean, that's 25 years right from the start. That's significant. So I think the lower court erred in the sentencing of him as well. So I'd ask that I appreciate the court's time. I asked the court grant the relief that I've requested. Thank you. All right. Thank you, Mr Burlow. Thank you both for the argument this afternoon. We will take the case under advisement.